1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LINDA OSTROFSKY,

11               Plaintiff,                          No. CIV S-07-0987 MCE EFB PS

12        vs.

13   DEPARTMENT OF REHABILITATION,
     JOHN MARTIN, KELLY COOK, and
14   DOES 1 through 25, inclusive,

15               Defendants.                         FINDINGS AND RECOMMENDATIONS

16   _____/

17        On February 11, 2009, this court heard defendants' motion to dismiss plaintiff's Third

18   Amended Complaint or, alternatively, for more definite statement.[1]  Plaintiff appeared and

19   represented herself; Deputy Attorney General Connie Broussard appeared on behalf of

20   defendants.  At the conclusion of the hearing, the court requested supplemental briefing on

21   several issues, which was completed in May 2009.  For the reasons discussed below, the court

22   recommends that defendants' motion to dismiss be granted in part, and that plaintiff be granted

23   leave to file a Fourth Amended Complaint.

24   ////

25   _____

26        [1] This action, in which plaintiff is proceeding *pro se*, was referred to the undersigned by
     Local Rule 72-302(c)(21), pursuant to 28 U.S.C. § 636(b)(1).

                                                1

1  <u>BACKGROUND</u>

2      The pertinent facts of this case have trickled in over the course of plaintiff's various

3  amendments to her complaints, in her varying exhibits, the lengthy hearing on the pending

4  motions, and the parties' subsequent briefing.  While pursuing an action in federal court can be a

5  daunting task for any *pro se* litigant, plaintiff has done so, admirably, with a certified learning

6  disability.  Both defendants and this court have sought to cull the essential facts of this case, and

7  to identify the appropriate causes of action based thereon, but the task remains difficult, if not

8  impossible, due to the many sources of information that have been submitted.  Moreover, this

9  responsibility lies with plaintiff.  Since it continues to appear that plaintiff is able to state causes

10  of action, she must be given yet another opportunity to amend her complaint in order to set forth

11  all essential facts and dates in one pleading, with all appropriate exhibits attached thereto, and to

12  articulate her legal claims, to the best of her ability, based upon specifically identified facts

13  associated with specific defendants.

14      Plaintiff filed her initial complaint on May 25, 2007.  On July 17, 2007, pursuant to

15  granting plaintiff's application to proceed *in forma pauperis,* the court dismissed plaintiff's

16  initial complaint, with leave to amend, for failure to comply with Fed. R. Civ. P. 8.  On

17  November 27, 2007, the court dismissed plaintiff's first amended complaint due to

18  insufficiencies in her claims under the Americans with Disabilities Act and the Rehabilitation

19  Act, and granted plaintiff leave to file a second amended complaint, which she filed on

20  December 26, 2007.  On February 1, 2008, the court dismissed plaintiff's second amended

21  complaint on the ground that Title VII does not contemplate claims for discrimination based on

22  disability.  Plaintiff was again granted leave to file an amended complaint eliminating this cause

23  of action.  On February 25, 2008, plaintiff filed the operative Third Amended Complaint, and the

24  court directed the U.S. Marshal to serve process upon defendants.  Defendants thereafter moved

25  to dismiss or for more definite statement.  Dckt. No. 24.  The hearing on this motion was held

26  after the court granted plaintiff two extensions of time within which to file her opposition.  After

1  the detailed hearing before the undersigned on February 11, 2009, *see generally,* Transcript

2  ("Tr."),[2] Dckt. No. 35, the court ordered supplemental briefing.

3      As set forth in her Third Amended Complaint ("TAC"), plaintiff contends that in May

4  2001 she commenced work as an "Account Clerk II" with defendant California Department of

5  Rehabilitation ("DOR").  TAC, ¶ 9(a).  Plaintiff alleges that she then told her immediate

6  supervisor, Kelly Cook,[3] (defendant John Martin was "Section chief," who "had control over

7  Plaintiff's advancement and success at DOR," TAC, at ¶¶ 3, 7) that plaintiff "was on the LEAP

8  State program (for people with disabilities)[4] and needed some accommodation." TAC, at 4.

9      Plaintiff alleges that she was thereafter discriminated against based on her disability, in

10  the form of a hostile work environment and failure to promote; then, when she complained, her

11  supervisors retaliated by refusing to provide plaintiff any reference for other employment.  *Id.*

12      The complaint alleges that after plaintiff asked for accommodation, Cook spoke to her

13  "in a slow, demeaning, and embarrassing manner," "as if she was retarded," and made derogatory

14  statements at staff meetings, such as "'we will be learning some new tasks today, and whoever

15  has trouble learning new things, will have a hard time." TAC, ¶ 9(a), (b).  The complaint further

16

17      [2] Transcript page numbers cited *infra* refer to the docketing pagination, not the pagination of the original document.

18      [3] The problems with the factual allegations of the Third Amended Complaint, as

19  compared to the facts revealed at the hearing on this matter, and those set forth in the supplemental briefing, are illustrated by plaintiff's allegations against Cook.  The Third

20  Amended Complaint provides that, "[a]t all times Defendant Kelly Cook [] was Plaintiff's immediate supervisor employed by the DOR, with managerial and supervisory authority over Plaintiff." TAC, ¶ 4.  *But see, e.g.,*Tr. at 12 ("Kelly [] was always absent," "I asked [Kelly] for a

21  reference because my new – Kelly moved to another department and my new supervisor, Lonnie, didn't know me very long"), and Defs.' Supp. Brf., at 13, n. 7 ("The exact date that

22  Cook was transferred is unclear").  Although the viability of plaintiff's claims may not depend on whether Cook remained in a direct supervisory role over plaintiff (for example, it does not

23  appear, at this juncture, significant that Cook was not directly supervising plaintiff when Cook allegedly refused to provide an appropriate reference for plaintiff), an accurate chronology

24  remains essential.

25      [4] LEAP (Limited Examination and Appointment Program) "is designed to offer an

26  alternative examination process to individuals with disabilities," within the California state employment system.  *See* http://www.spb.ca.gov/civilrights/disabilities.htm .

alleges that Cook and Martin "repeatedly prevented [plaintiff] from being promoted" to Account Technician, yet required plaintiff to train others who were promoted in her place. *Id.* at ¶ 9(c). The Third Amended Complaint alleges that plaintiff was passed over for promotions on March 20, 2003, and April 5, 2003. *Id.* at ¶ 9(d). However, plaintiff stated at the hearing that she was again passed over for a promotion in February 2006, despite being the "only one left in my Department," Tr. at 21-24. Plaintiff explains in her supplemental responses that the position was posted in February 2006 (but plaintiff's supervisor failed to inform her of the opening), Dckt. No. 38, at 4, and she interviewed for the position in March 2006, Dckt. No. 39, at 1-2.

Plaintiff states that at all times she "performed excellently on the job; exceeded production standards; trained new employees; received excellent performance apprais[als], and even exceeded her job description by performing higher level Accounting Technician duties on numerous occasions." TAC, at ¶ 9(a). Plaintiff stated at the hearing that she also took college accounting classes. Tr. at 11-12.

The Third Amended Complaint provides that plaintiff was unable to find other employment because Cook told other prospective employers, "that Plaintiff is slow and has difficulty learning and retaining new information; and can only learn one thing at a time." TAC, at ¶ 9(f). The complaint provides that plaintiff complained to defendant Martin on April 10, 2006, who responded that "'no one will believe a perfect reference, and that he gave out other negative references on other people.'" *Id.* at ¶ 9(g). Further, alleges plaintiff, after she filed a complaint under the state Fair Employment and Housing Act ("FEHA") on April 21, 2006, Martin retaliated by "ordering DOR employees not to give any further job references on Plaintiff to her prospective employers." *Id.* at ¶ 9(h).

////
////
////
////

4

The facts underlying plaintiff's retaliation claim were described differently at the hearing. Plaintiff stated, for example, that on May 15 or 16, 2005[5] (at which time plaintiff had a new supervisor, Lonny Franklin, who did not know her very well), plaintiff asked Cook if she would be a reference for plaintiff.  Cook stated that she would, but would need to tell prospective employers that plaintiff has "trouble memorizing and [has] to learn one thing at a time."  Tr. at 13, 17-18.  On May 16, 2005, plaintiff wrote an e-mail to Cook asking her not to provide such reference.  *Id.* at 14-15.  On May 19, 2005, plaintiff spoke with Kelly's supervisor, Betty Jong, and expressed frustration with Cook's position.  *Id.* at 18.  On May 20, 2005, plaintiff was summoned to a meeting with Martin, Cook, and others (including Lonny Franklin and Betty Jong, who later interviewed plaintiff for the February/March 2006 promotion, *see* Pl.'s Supp. Resp., Dckt. No. 38, at 2).  At the meeting, Martin gave plaintiff the choice of obtaining no reference, or the reference as presented by Cook.  *Id.* at 19-20.  While plaintiff "didn't like either one of the choices," she agreed to "take what Kelly says," and Cook said she might change some of the wording.  *Id.* at 20.  On May 20 or 21, 2005, plaintiff asked Cook if she was going to change the wording, and Cook told plaintiff she couldn't talk with her.  "[A]nd then . . . John Martin called me into his office and he said he doesn't want me bothering people about it.  So then he says you're going to have no reference.  And then he says I don't want you to tell anyone about this and I started crying . . . ."  *Id.* at 20-21.

 "Thereafter, because of the severe emotional distress injuries inflicted on Plaintiff by Defendants, she became so upset that she had a mental breakdown, was suicidal and admitted into Sacramento County mental hospital and eventually Plaintiff took an early retirement." TAC, at 6.  Plaintiff retired from DOR on November 7, 2006.  Dckt. No. 37, at 2.

---

[5]  Immediately apparent is the contradiction in dates between plaintiff's Third Amended Complaint and her statements at the hearing (2005 versus 2006).  Plaintiff provides additional dates in her responses filed after the hearing.  Thus, despite the best efforts of defendants and the court to isolate the pertinent facts and address their legal implications, it is, at this point, guesswork.

LEGAL STANDARDS

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). A *pro se* litigant is entitled to notice and an opportunity to amend her complaint unless it is clear that no amendment can cure its inadequacies. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir.2000) (*en banc*); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987).

On a motion to dismiss, the court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The complaint's factual allegations are accepted as true. *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). The court may, without converting a motion to dismiss into a motion for summary judgment, consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *United States v. Ritchie*, 342 F. 3d 903, 907-908 (9th Cir. 2003). The court may also consider facts which may be judicially noticed, *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "'The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.'" *Id.*, quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) (internal punctuation omitted). Rather, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell*, at 127

6

1  S.Ct. at 1974).  Factually unsupported claims framed as legal conclusions, and mere recitations

2  of the legal elements of a claim, do not give rise to a cognizable claim for relief.  *See Ashcroft v.*

3  *Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951 (May 18, 2009) (citing *Twombly*, 550 U.S. at 555).

4  <u>DISCUSSION</u>

5          The Third Amended Complaint purports to assert claims under:  (1) the Rehabilitation

6  Act of 1973, 29 U.S.C. §§ 701 *et seq*. ("Rehabilitation Act"); (2) Title VII of the Civil Rights

7  Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and (3) California's Fair Employment and

8  Housing Act, Cal. Gov't Code §§ 12940 *et seq*. ("FEHA").  Each is addressed below.

9          A.  <u>TITLE VII</u>

10         As the court has previously explained in the order dismissing plaintiff's second amended

11  complaint, plaintiff may not proceed under Title VII of the Civil Rights Act of 1964 ("Title

12  VII"), 42 U.S.C. §§ 2000e *et seq*., because Title VII does not apply to claims of discrimination

13  based on disability.  *See* 42 U.S.C. § 2000e-2(A)(1) (unlawful employment practices under Title

14  VII limited to claims of discrimination based on race, color, religion, sex and national origin).

15  *See* Order, Dckt. No. 14, at 1-2.

16         Accordingly, plaintiff's Title VII claims should be dismissed without leave to amend.

17  Should plaintiff filed a Fourth Amended Complaint, she should not assert a claim under Title

18  VII.

19         B.  <u>CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT</u>

20         The Eleventh Amendment bars plaintiff's claims, in federal court, against the state and its

21  employees under the California Fair Employment and Housing Act ("FEHA").  *See Freeman v.*

22  *Oakland Unified Sch. Dist*., 179 F.3d 846, 847 (9th Cir. 1999); *see also Mar v. San Francisco*

23  *Unified School District*, 1995 WL 621816 (N.D. Cal. 1995) (relying on *Pennhurst State School*

24  *and Hospital v. Haldeman*, 465 U.S. 89 (1984) (suits against states based on pendant jurisdiction

25  barred by Eleventh Amendment)).  "California has not waived its immunity to FEHA actions in

26  federal court.  *See Fordyce v. City of Seattle*, 55 F.3d 436, 441 (9th Cir. 1995) ('[A] statute

1  consenting to suit in state court does not constitute consent to suit in federal court.').” *Freeman,*

2  *supra,*179 F.3d at 847.

3         Accordingly, plaintiff's FEHA claims should be dismissed without leave to amend, but

4  without prejudice to plaintiff pursuing the claims in state court.[6]  Should plaintiff file a Fourth

5  Amended Complaint, she should not assert a claim under FEHA.

6         C. <u>AMERICANS WITH DISABILITIES ACT</u>

7         The remaining question is whether plaintiff must be permitted leave to amend so that she

8  may attempt to properly plead a disability discrimination claim.  It is apparent that she intended

9  to pursue a claim of disability discrimination.  Moreover, her second right-to-sue letter from the

10  EEOC instructs her that she may file claims under Titles I and V of the Americans with

11  Disabilities Act (“ADA”), 42 U.S.C. §§ 12010 *et seq*.  It may be, relying on the same standards

12  applicable to the Rehabilitation Act,[7] which is addressed below, that plaintiff might be able to

13  plead in a Fourth Amended Complaint claims for both discrimination and retaliation under the

14  ADA.  However, plaintiff is admonished that any attempt to assert an ADA claim in an amended

15  complaint must specifically allege facts establishing each required element of the claim.

16  Furthermore, any remedy under these claims will be limited to declaratory and prospective

17  injunctive relief.[8]  *See* Order, Dckt. No. 5, at 4-5.

18  _____

19         [6] Plaintiff is informed, however, that FEHA has a one-year statute of limitations, *see* Cal.
20  Gov't Code §12960(b), but recognizes the continuing violations doctrine as an equitable
   exception thereto, *see, e.g., Richards v. CH2M Hill, Inc*., 26 Cal.4th 798, 802 (2001).

21         [7] There is no significant difference in the analysis of rights and obligations created by
22  the Rehabilitation Act and the ADA.  *See, e.g., Vinson v. Thomas*, 288 F.3d 1145, 1152 (9th Cir.
   2002) (citing *Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045, n. 11 (9th
   Cir. 1999)).

23
24         [8] Although, as defendants contend, plaintiff's retirement from DOR renders it unlikely
   that there exists appropriate injunctive relief, it would be premature for this court to so conclude,
25  since plaintiff has not expressed an unequivocal decision not to return to work, or to obtain some
   other appropriate equitable relief from DOR.  *Cf., Jadwin v. County of Kern*, 2009 WL 2424565
26  (E.D. Cal. Aug. 6, 2009) (failure of plaintiff to satisfy redressibility requirement of standing
   rendered moot plaintiff's claim for injunctive relief, citing *Walsh v. Nevada Dept. of Human*

8

"A claim of discrimination under Title I of the ADA[9] enables individuals who have suffered employment discrimination because of their disabilities to sue employers for damages and obtain injunctive relief in federal court.  [Although] [s]tate governments can invoke the Eleventh Amendment's guarantee of sovereign immunity against Title I suits seeking money damages,"  this immunity "does not bar Title I suits against state officials for prospective injunctive and declaratory relief."  *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1036 (9th Cir. 2006) (citing *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 360, 374, n.9, and *Ex parte Young*, 209 U.S. 123 (1908)).

Plaintiff may also attempt to state a claim for retaliation under Title V of the ADA.[10]  *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.").[11]

---

*Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006), and *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).  The court is principally concerned, at this point, in providing sufficient information so that plaintiff may file a workable complaint.

[9]  "To establish a *prima facie* case of discrimination under Title I of the ADA, plaintiff must show that 1) she is a disabled person within the meaning of the ADA; 2) she is able to perform the essential functions of the job with or without reasonable accommodation; and 3) she suffered an adverse employment decision because of her disability.  42 U.S.C. §§ 12112(b)(5)(A) & 12111(8); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)." *Waters v. Fred Meyer Stores, Inc*., 2009 WL 1874271, 4 (D.Or. 2009).

[10]  Defendants' reliance on *Demshki v. Monteith*, 255 F.3d 986 (9th Cir. 2001) (Eleventh Amendment bars Title V retaliation claims against state employer), appears misplaced.  *Demshki* did not make the critical *Young* distinction between the availability of monetary versus equitable relief under the Eleventh Amendment, and *Demshki* was decided before *Walsh*, which expressly held that the Eleventh Amendment does not bar ADA suits against state officials for declaratory or injunctive relief.

[11]  "To establish a *prima facie* case of retaliation [under section 12203(a) of the ADA], a plaintiff must show:  (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action."  *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1287 (11th Cir.1997); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir.2003); *Coons v. Secretary of U.S. Dept. of Treasury*,

9

1    Accordingly, plaintiff should be given an opportunity to assert, if she can, a

2  discrimination claim under Title I of the ADA, and a retaliation claim under Title V of the ADA,

3  with the limitation that these claims seek only declaratory and prospective injunctive relief.

4  Should plaintiff make these claims, she must name as defendant the director of the California

5  Department of Rehabilitation in his or her official capacity.  *Walsh*, 471 F.3d at 1036; Order,

6  Dckt. No. 12, at 2-3.

7    D.  <u>REHABILITATION ACT</u>

8      1.  *Prima Facie* Claims

9       a.  <u>Discrimination</u>

10    Plaintiff asserts against all defendants claims of discrimination based on disability in

11  violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 *et seq*.

12  Section 504 of the Rehabilitation Act (codified at 29 U.S.C. § 794) provides in pertinent part:

13      No otherwise qualified individual with a disability in the United States ... shall,
        solely by reason of her or his handicap, be excluded from the participation, be

14      denied the benefits of, or be subjected to discrimination under any program or
        activity receiving Federal financial assistance.

15

16    Claims under the Rehabilitation Act are subject to the same standards applied under the

17  ADA.  *See* 29 U.S.C. § 794(d), 791(g) (applying ADA standards to Rehabilitation Act); *Coons*,

18  383 F.3d at 884.  To state a *prima facie* claim of discrimination under Section 504, plaintiff must

19  allege that: (1) she is disabled within the meaning of the Act; (2) she was able to perform the

20  essential aspects of her employment either without accommodations or with reasonable

21  accommodations; (3) defendant receives federal financial assistance; and (4) defendant engaged

22  in adverse employment action(s) that impermissibly discriminated against plaintiff based on her

23  disability.  *See Bonner v. Lewis*, 857 F.2d 559, 562-63 (9th Cir. 1988); *Duffy v. Riveland*, 98

24  F.3d 447, 454 (9th Cir. 1996); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

25  ───────────────

26  383 F.3d 879, 887 (9th Cir. 2004).

10

Although the current amended complaint is still wanting, the facts culled from plaintiff's original and amended complaints, as well as the hearing on this matter and supplemental briefing, demonstrate that plaintiff may be able to satisfy the requirements for stating a claim of discrimination under Section 504.  Defendants do not dispute that DOR receives federal financial assistance.  Plaintiff states that she has a "learning disability" which requires that information be "given a little slower" and that plaintiff  "make a lot of notes;" and that this disability was "certified by a doctor" as a prerequisite to plaintiff qualifying for the LEAP program.[12]  Tr. at 5, 4.  Plaintiff alleges that she capably performed the essential functions of her job, including training others, processed more than the average number of invoices, and took related college accounting classes.  Nonetheless, plaintiff alleges, defendants maintained a hostile work environment, failed to promote her, and retaliated in response to her complaints.  These allegations support a *prima facie* claim of discrimination under the Rehabilitation Act.  Plaintiff's later-added allegation that another qualified LEAP employee was also overlooked for promotion may add support to this claim.[13]

For these reasons, plaintiff should be given another opportunity to properly plead a claim of disability discrimination under the Rehabilitation Act.  Plaintiff suggests but does not expressly develop in her complaint various theories for the discrimination claim.  Each is discussed below.

////

---

[12]  "According to the ADA, an individual is disabled if that individual (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.  *Deppe v. United Airlines*, 217 F.3d 1262, 1265 (9th Cir.2000); *see also* 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)."  *Coons*, 383 F.3d at 884.

[13]  Plaintiff states in part: "There was another person (Roza Nelson) from the LEAP program who was hired in my unit.  She did an excellent job and was also doing the same work as an accountant tech.  Either one of us, or both of us could have been promoted to the position of accountant tech.  However, another employee was hired as an accountant Tech (not from the LEAP program) who Roza and I trained."  Dckt. No. 37, at 5, *see also*, *id.,* at 5-6.

b. <u>Retaliation</u>

"[T]he *prima facie* case for retaliation under the Rehabilitation Act is the same as that under the ADA." *Albra v. City of Fort Lauderdale* , 232 Fed.Appx. 885, 891, 2007 WL 1213230, 6 (11th Cir. 2007). "A *prima facie* case of retaliation [under the Rehabilitation Act] requires a plaintiff to show: '(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two.'" *Coons,* 383 F.3d at 887 (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir.2003) (ADA)). "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Prods., Inc*., 212 F.3d 493, 507 (9th Cir. 2000).

In her Third Amended Complaint, plaintiff alleges that in retaliation for plaintiff's protected activities of "complain[ing] to the management about defendant Cook['s] adverse actions against her," and "fil[ing] a complaint with the EEOC," "[d]efendants Martin and Cook refused and instructed other supervisory employees to stop giving job reference on Plaintiff to prospective employers." TAC, at 8. This alleged conduct, and perhaps others (e.g., refusal to promote, refusal to inform of job openings), are sufficient to state a claim for retaliation.

c. <u>Harassment / Hostile Work Environment as Discrimination and Retaliation</u>

Plaintiff's Title VII and FEHA claims failed for the reasons discussed above. Nonetheless, her allegations of harassment in support of those ill-fated claims appear to be sufficient for purposes of asserting a claim of retaliation under the proper statutes. There is no question that a retaliation claim is cognizable under either both the Rehabilitation Act and the ADA. However, although it is unclear from her complaint, plaintiff seems to now be trying to assert claims of discrimination and retaliation based on a hostile work environment theory, i.e., that such an environment was created as a means of harassing her because of her disability and/or to retaliate against her for having complained of discrimination. Defendants point out

that the Ninth Circuit has yet to determine whether a discrimination claim under the ADA may

be predicated on a claim of hostile work environment.  *See Brown v. City of Tucson*, 336 F.3d at

1190.  However, there appears to be a growing recognition of the claim based on analogous Title

VII analysis and it has been sufficiently recognized within this circuit to support its inclusion at

the pleading stage of this action.  *See Roberts v. Dimension Aviation*, 319 F. Supp.2d 985, 988

(D. Az. 2004) (acknowledged *Brown*, "assume[d] . . . without holding, that a cause of action for

harassment exists under the ADA," but found insufficient evidence to withstand a motion for

summary judgment); *accord, Young v. Nicholson*, 2007 WL 128821, 13-14 (E.D. Wash. 2007)

(analyzed hostile work environment claim under ADA but found insufficient evidence to

overcome rejection of claim by administrative agency); *Sandy v. Potter*, 2008 WL 4058002, 1

(D. Or. 2008) (applied analysis but found insufficient evidence to withstand motion for summary

judgment); *Linder v. Potter*, 2009 WL 2595552, 12 (E.D. Wash. 2009) (same); *Garcia v. Qwest

Corp.*, 2008 WL 5114317, 13-15 (D. Az. 2008) (same); *Lucke v. Multnomah County,* 2008 WL

4372882 (D. Or. 2008) (same); *Fowler v. Potter,*  2008 WL 2383073, 5-6 (N.D. Cal. 2008)

(recognized claim for hostile work environment under the Rehabilitation Act, but found that

plaintiff failed to exhaust administrative remedies).

Consistently, as the *Roberts* court noted, "several other circuits have recognized such a

cause of action because of the similarity between the language of the ADA and Title VII."

*Roberts v. Dimension Aviation*, 319 F. Supp.2d at 988 (citing *Fox v. General Motors

Corporation*, 247 F.3d 169, 175 (4th Cir. 2001)), *Flowers v. Southern Regional Physician

Services, Inc.*, 247 F.3d 229, 233 (5th Cir. 2001), and *Shaver v. Independent Stave Company*,

350 F.3d 716, 719-20 (8th Cir. 2003); *see also*, *e.g.*, *Lanman v. Johnson County*, 393 F.3d 1151,

1155-1156 (10th Cir. 2004) (ADA).  In addition, circuit courts "frequently assume, without

deciding, that a hostile work environment cause exists in order to dispose of a plaintiff's claims.

*Walton v. Mental Health Ass'n*, 168 F.3d 661, 666 (3d Cir. 1999); *Flowers v. Southern Regional

Physician Serv.*, 247 F.3d 229, 233 (5th Cir. 2001)."  *Linder v. Potter*, *supra*, 2009 WL 2595552

13

1   at 12.

2          Here, as in the cases noted above, the court need not determine at this stage whether

3   plaintiff can ultimately prevail on a disability discrimination or retaliation claim predicated on a

4   hostile work environment theory.  The court need only to determine whether she should be

5   permitted leave to amend to assert the claim.  Defendants' supplemental brief argues, in effect,

6   that any such amendment would be futile as it would fail as a matter of law.  However, the court

7   reserves ruling on those arguments until plaintiff has actually filed an amended complaint the

8   articulates the specific factual predicate for the claim(s).

9          Plaintiff should be granted leave to amend her complaint to assert her harassment/hostile

10  work environment claim under the Rehabilitation Act and the ADA.  Plaintiff is admonished that

11  any amended complaint must contain specific factual allegations demonstrating each of the

12  required elements of the claims.  As articulated in this circuit, "[a] claim for harassment based on

13  disability, like one under Title VII,[14] would require a showing that: (1) Plaintiff is a qualified

14  individual with a disability under the Rehabilitation Act; (2) [she] was subject to unwelcome

15  harassment; (3) the harassment was based on [her] disability or a request for an accommodation;

16  (4) the harassment was sufficiently severe or pervasive to alter the conditions of [her]

17  employment and to create an abusive working environment; and (5) that defendant knew or

18

19          [14] "In reviewing Plaintiff's claims [under the ADA], the Court looks to Title VII case law

20  to determine whether harassment occurred.  *See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d
    564, 568 (9th Cir.2004)(drawing on Title VII precedent to set out plaintiff's burden in an ADA

21  case); *Snead v. Metro Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (holding that
    Title VII analysis applies in ADA cases).  In doing so, the Court must look at 'all the

22  circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is
    physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

23  interferes with an employee's work performance' to determine whether an actionable hostile
    work environment claim exists.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116

24  (2002).  The Supreme Court has held that '[w]hen the workplace is permeated with
    "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to

25  alter the conditions of the victim's employment and create an abusive working environment,"
    Title VII is violated.'  *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)."  *Young v. Nicholson*,

26  2007 WL 128821, 13.

                                                    14

1   should have known of the harassment and failed to take prompt effective remedial action.[15]  *See*

2   *McConathy v. Dr. Pepper/Seven Up Corp*., 131 F.3d 558, 563 (5th Cir. 1998).  The required

3   showing of severity or seriousness of the harassing conduct varies inversely with the

4   pervasiveness or frequency of the conduct.  *Steiner v. Showboat Operating Co.*, 25 F.3d 1459,

5   1463, n. 4 (9th Cir. 1994)."  *Sandy v. Potter*, 2008 WL 4058002, at 2; *accord, Linder v. Potter*,

6   2009 WL 2595552, 12 (E.D. Wash. 2009).

7         For the foregoing reasons, plaintiff should be granted leave to file a Fourth Amended

8   Complaint alleging claims for discrimination and/or retaliation premised on a hostile work

9   environment, under both the Rehabilitation Act and ADA.

10                2.  No Individual Liability Under Section 504

11        Defendants contend that plaintiff may not maintain a Section 504 claim against

12  individual defendants Martin and Cook because the Rehabilitation Act does not provide for

13  individual liability, citing *Eason v. Clark County School District*, 303 F.3d 1137, 1145 (9th Cir.

14  2002).  While the Ninth Circuit specifically declined to reach this issue in *Eason* (because

15  plaintiffs therein did not appeal the dismissal of their Rehabilitation Act and ADA claims against

16  the individual defendants), that court acknowledged defendants' reliance on *Vinson v. Thomas*,

17  288 F.3d 1145, 1155-56 (9th Cir. 2002) (which held more broadly that "a plaintiff cannot bring

18  an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate

19  rights created by Title II of the ADA or section 504 of the Rehabilitation Act"); and *Garcia v.*

20  *S.U.N.Y. Health Sciences Center*, 280 F.3d 98, 107 (2d Cir. 2001) (which expressly found that

21

22        [15]  Plaintiff's allegations, particularly when they are parsed to conform to these factors,
preliminarily suggest that she can meet this test.  The Third Amended Complaint alleges that
23  defendants, particularly Cook, knowingly demeaned and humiliated plaintiff based on her
disability, when plaintiff began working for DOR, and that this tenor continued until plaintiff's
24  early retirement due to emotional distress.
          Significantly, a claim for hostile work environment may be made under a continuing
25  violations theory (discussed *infra*).  So viewed, "[a] charge alleging a hostile work environment
claim [which] will not be time barred so long as all acts which constitute the claim are part of the
26  same unlawful employment practice and at least one act falls within the time period."  *Nat'l R.R.*
*Passenger Corp. v. Morgan*,  536 U.S. 101, 122 (2002).

"neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials," and noting that the Seventh and Eighth Circuits has also reached this decision). *See also Daniel v. Levin*, 172 Fed.Appx. 147, 149, 2006 WL 475440, 2 (9th Cir. 2006) (finding that plaintiff "cannot seek damages or injunctive relief pursuant to the ADA or Rehabilitation Act (RA) against the defendants in their individual capacities," citing *Eason*). District courts within this Circuit have endorsed this construction. *See, e.g., Doe ex rel. Doe v. State of Hawaii Dept. of Educ.*, 351 F. Supp.2d 998, 1010 -1011 (D. Hawai'i, 2004) (noting decisions of the Second, Sixth, and Fourth Circuits holding that Section 504 does not provide for individual capacity suits); *Socorro v. California*, 2007 WL 2254464, 4 (E.D. Cal. 2007); *McElroy ex rel. McElroy v. Tracy Unified School Dist.*, 2008 WL 5045952, 13 (E.D. Cal. 2008).

Pursuant to these authorities, plaintiff cannot maintain her Section 504 claims against the individual defendants, supervisors Martin and Cook, in their personal capacities; they may be sued only in their official capacities. The court is mindful of defendants' arguments as to the ultimate futility of any such claims and, while the court reserves ruling on much of those contentions, certain of the arguments are addressed below.

3. <u>State is Not Immune from Monetary Damages Under the Rehabilitation Act</u>

Citing general Eleventh Amendment cases, defendants contend that DOR *should be* immune from Rehabilitation Act claims but "acknowledge that the circuits are split on this issue, and that the Ninth Circuit has ruled that the State is *not* immune from Rehabilitation Act claims." Defs.' Mot. to Dism., at 9, and n. 4 (citing, *inter alia*, *Vinson*, 288 F. 3d at 1148, 1152 (waiver upon acceptance of federal funds)). The question is well settled in this circuit. *See Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1186 (9th Cir. 2003) ("because the State voluntarily accepted §federal funds under Section 504, it has waived its right to immunity from suit under the Eleventh Amendment"); *see also Pugliese v. Dillenberg* 346 F.3d 937 (9th Cir. 2003) (per curiam) (citing *Miranda B.,* 328 F.3d at 1185-86; *Lovell v. Chandler*, 303 F.3d 1039, 1050-51 (9th Cir. 2002); *Douglas v. Cal. Dept. of Youth Auth.*, 271 F.3d 812, 819-21 (9th Cir. 2001),

1   *rehearing en banc denied,* 285 F.3d 1226 (9th Cir. 2002).  The Ninth Circuit's ruling is

2   dispositive here.

3          Moreover, this waiver of immunity appears to extend to monetary damages.  *See Larson*

4   *v. Ching*, Slip Copy, 2009 WL 1025872 (D. Hawai'i, Apr. 16, 2009) (allowing Rehabilitation

5   Act claim for monetary damages where plaintiff was not seeking declaratory or injunctive relief)

6   *Accord, Lovell v. Chandler,* 303 F.3d at 1056 (citing *Ferguson v. City of Phoenix*, 157 F.3d 668,

7   674 (9th Cir.1998)); *see also Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001);

8   *Shepard v. Irving*, 77 Fed.Appx. 615, 619, 2003 WL 21977963, 4 (fn. omitted) (4th Cir.  2003)

9   (each requiring showing of discriminatory intent).

10         The court therefore concludes that plaintiff may seek damages, as well as declaratory and

11   prospective injunctive relief, against DOR pursuant to her Rehabilitation Act claims.

12                     4.  <u>Statute of Limitations</u>

13         Defendants contend that most if not all of plaintiff's claims under Section 504 are barred

14   by the two-year statute of limitations applied to such actions in California.  For the reasons

15   previously set forth, and those that follow, the court is unable to resolve this issue based on the

16   contours of the Third Amended Complaint and related documents.  The court therefore sets out

17   the applicable parameters, pursuant to which plaintiff's next amended complaint will be

18   evaluated.

19          "Section 504 contains no statute of limitations. '[I]n the absence of a federal statute of

20   limitations for claims arising under [a federal act], the controlling statute of limitations is the

21   most appropriate one provided by state law.' *Donoghue v. County of Orange*, 848 F.2d 926, 930

22   (9th Cir. 1987) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462 [](1975)).

23   Courts generally apply the forum state personal injury statute of limitations to Section 504

24   claims.  *See Daviton v. Columbia/HCA Healthcare Corp*., 241 F.3d 1131, 1135 (9th Cir. 2001).

25   In California, the personal injury statute of limitations is two years.  Cal. Code Civ. P. § 335.1.

26   Therefore, Plaintiff's Section 504 claim is subject to a two-year statute of limitations." *J.W. ex*

1    *rel J.E.W. v. Fresno Unified School Dist.*, 570 F. Supp.2d 1212, 1222 (E.D. Cal. 2008).

2         "While state law determines the period of limitations, federal law determines when a

3    cause of action accrues.  Under federal law, a cause of action generally accrues when a plaintiff

4    knows or has reason to know of the injury which is the basis of his action."  *Cline v. Brusett,* 661

5    F.2d 108, 110 (9th Cir. 1981) (citations omitted).  Plaintiff filed her initial complaint on May 25,

6    2007.  Thus, absent equitable tolling, discussed *infra*, plaintiff's claims are timely filed only if

7    they accrued on or after May 25, 2005.

8                              a. Equitable Tolling

9          "In the absence of a federal rule, '[a]long with the limitations period, the court borrows

10   the state's equitable tolling rules, absent a reason not to do so.' *Daviton*, 241 F.3d 1131, 1135.

11   In California, the 'long settled rule [is] that whenever exhaustion of administrative remedies is a

12   prerequisite to a civil action the running of the limitations period is suspended during the

13   administrative proceedings.' *Addison v. State*, 21 Cal.3d 313, 318, [] (1978) (citing *Dillon v.*

14   *Board of Pension Commrs.*, 18 Cal.2d 427 [] (1941)).  '[R]egardless of whether the exhaustion of

15   one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby,

16   the running of the limitations is tolled when an injured person has several legal remedies and,

17   reasonably and in good faith, pursued one.' *Id*. (quoting *Elkins v. Derby*, 12 Cal.3d 410, 414 []

18   (1974))."  *J.W. ex rel J.E.W.*, 570 F. Supp.2d at 1222 (finding that plaintiff's Section 504

19   two-year statute of limitations is tolled for the period of the administrative process).  "Under

20   *Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993), plaintiffs need not literally raise

21   'equitable tolling' in the complaint for the doctrine to apply.  Rather, 'the sole issue is whether

22   the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges

23   facts showing the potential applicability of the equitable tolling doctrine.' *Id*. at 1277."  *Einheber*

24   *v. Regents of University of Cal.*, 119 Fed.Appx. 861, 862, 2004 WL 2862156, 1 (9th Cir. 2004)

25   (emphasis deleted) (finding that the district court erred by dismissing on statute of limitations

26   grounds plaintiff's Rehabilitation Act claim without considering the potential applicability of

                                              18

1   equitable tolling by virtue of timely filing the administrative action).

2         The Third Amended Complaint references the administrative proceedings that preceded

3   plaintiff's filing in this court, and thus raises an equitable tolling defense.  The complaint states,

4   "[o]n or about April 21, 2006, Plaintiff went to the Department of Fair Employment and Housing

5   and subsequently to the EEOC and formally lodged a complaint for discrimination and

6   harassment based on her disability."  TAC, at ¶ 9(h).  In her "Objection to Defendant's Motion to

7   Dismiss," plaintiff states that she filed her EEOC complaint "with the Local EEOC" on June 21,

8   2006, and "with the Federal EEOC" on June 22, 2006, and obtained her "right-to-sue letter" on

9   March 28, 2007.  Dckt. No. 32, at 1.  Indeed, attached to her original complaint are plaintiff's

10   right-to-sue letters issued by the EEOC on March 28, 2007.[16]  Plaintiff has not filed any evidence

11   in support of her FEHA action, but suggests in her "Objection" that she filed her FEHA

12   complaint "before October 24, 2006."  Dckt. No. 32, at 1.

13         Defendants acknowledge that "it is unclear from the complaint or associated documents

14   whether or how long Plaintiff's claim should be tolled."  Defs.' Supp. Brf., Dckt. No. 36, at 11.

15   On a duration basis alone, it appears that the statute of limitations may well be tolled during the

16   pendency of plaintiff's EEOC complaint, apparently from June 21, 2006 to March 28, 2007, a

17   period of 280 days, which would result in plaintiff's claims accruing on or after August 18, 2004,

18   rather than May 25, 2005.  However, in addition to the duration, or length-of-tolling, question,

19   the nature of the claims plaintiff presented to the EEOC have not been adequately disclosed.

20   This information is presented only in plaintiff's statement that "[t]he information I submitted to

21   the [EEOC] was regarding acts of discrimination which started in May, 2005 and occurred

22   throughout 2006."  Pl.'s Objs., Dckt. No. 32, at 1-2.  This is not enough.  In her further amended

23

24        [16]   The EEOC letters are duplicative, except the first letter notifies plaintiff – incorrectly
    – that she has the right to institute a civil action under Title VII of the Civil Rights Act of 1964,
25   as amended, 42 U.S.C. §§ 2000e, *et seq.*, while the second letter states – correctly – that plaintiff
    may pursue claims under "Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §
26   12111 et seq., and Title V, Section 503 of the Act, 42 U.S.C. § 12203."

1  complaint, plaintiff must include as exhibits copies of the complaints she submitted to the

2  EEOC.  This is critical because the court must assess whether plaintiff's claims in this court have

3  been administratively exhausted.[17]

4       The importance of equitable tolling and exhaustion of plaintiff's claims cannot be

5  overstated.  It is imperative that plaintiff attach, to her amended complaint, a copy of her

6  administrative complaint before the EEOC, any notices of investigation or other communications

7  from the EEOC, and both right-to-sue letters.

8                    b.  Continuing Violations Doctrine

9       "The continuing violations doctrine extends the accrual of a claim if a continuing system

10 of discrimination violates an individual's rights 'up to a point in time that falls within the

11 applicable limitations period.'"  *Douglas v. California Dept. of Youth Authority*, 271 F.3d 812,

12 822 (9th Cir. 2001) (quoting *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir. 1982)).

13 "The timeliness of a discrimination claim is measured from the date the claimant first has notice

14 of the allegedly discriminatory action.  Plaintiffs asserting continuing violations for

15 Rehabilitation Act limitations purposes must demonstrate more than a series of discriminatory

16

17      [17]  "To establish federal subject matter jurisdiction, plaintiff is required to exhaust his
18 EEOC administrative remedies before seeking federal adjudication of his claims.  *See Sosa v.
Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).  The scope of the court action depends upon the
scope of both the EEOC charge and the EEOC investigation.  *Id.*  Allegations of discrimination
19 that are omitted in an EEOC charge fall outside of a federal court's jurisdiction unless the new
claims are like or reasonably related to the allegations contained in the EEOC charge.  *Green v.
20 Los Angeles Co. Superintendent of Schs*., 883 F.2d 1472, 1475-76 (9th Cir. 1989).  A court may
exercise jurisdiction over charges of discrimination that were a part of the EEOC's investigation
21 or could be within the scope of an EEOC investigation that could reasonably arise from the
asserted charges.  *EEOC v. Farmer Bros. Co.*, 31 F .3d 891, 899 (9th Cir. 1994)."  *Sandy v.
22 Potter*, 2008 WL 4058002 at 1.
        "California courts have developed a 'definitive three-pronged test for invocation of the
23 doctrine' of equitable tolling.  A plaintiff's pursuit of a remedy in another forum equitably tolls
the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the
24 defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence
for the second claim; and 3) good faith and reasonable conduct in filing the second claim.  The
25 doctrine of equitable tolling focuses on the effect of the prior claim in warning the defendants in
the subsequent claim of the need to prepare a defense."  *Cervantes,* 5 F.3d at 1275 (citations
26 omitted).

1   acts; they must show an organized scheme leading to and including a present violation such that

2   it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence,

3   which gives rise to the cause of action." 6 Fed. Proc., L. Ed. § 11:950 (fns. omitted).  "We have

4   recognized two methods by which a plaintiff may establish a continuing violation.  First, the

5   plaintiff may show a serial violation by pointing to a series of related acts against one individual,

6   of which at least one falls within the relevant period of limitations . . . .  Second, a plaintiff may

7   show a systematic policy or practice of discrimination that operated, in part, within the

8   limitations period – a systemic violation." *Douglas,* 271 F.3d at 822 (citations and internal

9   quotations omitted).

10          Pursuant to their supplemental briefing, defendants argue that neither method for

11   establishing a continuing violation applies in this case.  Dckt. No. 36, at 14-15.  Noting the three

12   principal types of conduct at issue here – derogatory comments, failure to promote, and failure to

13   provide an appropriate reference – defendants assert that they are too dissimilar to constitute a

14   continuing violation under a continuing course of conduct theory, which requires that the

15   conduct be "(1) sufficiently similar in kind, (2) have occurred with reasonable frequency, and (3)

16   have not acquired a degree of permanence," *Leland v. City and County of San Francisco*, 576

17   F. Supp.2d 1079, 1093 (N.D. Cal. 2008) (citations and internal quotations omitted).

18          As defendants note, failure to promote is generally considered a discrete act that is

19   actionable only if it occurred within the applicable time period.  "Discrete acts such as

20   termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each

21   incident of discrimination and each retaliatory adverse employment decision constitutes a

22   separate actionable 'unlawful employment practice.'" *Morgan,* 536 U.S. at 114.  Defendants rely

23   on the allegations of plaintiff's Third Amended Complaint that she was denied promotions in

24   March and April 2003, and argue that these are outside any applicable limitations period.

25   However, at the hearing, plaintiff stated that she was again denied a promotion in March 2006,

26   the latter clearly coming within any applicable time period.

21

1    Similarly, refusal to provide an appropriate reference, even if construed as a discrete act

2    of legal significance that took place as early as May 2005, would come within the accrual period

3    upon application of equitable tolling.

4    At this early stage and without yet seeing plaintiff's next amended complaint, the court is

5    not persuaded, however, that the challenged conduct, as a whole, marked by demeaning

6    comments and reinforced by discrete acts of failure to promote and refusal to provide appropriate

7    reference, does not support a hostile work environment claim for which the continuing violations

8    theory would apply.  *See Morgan*, 536 U.S. at 116-117 ("It does not matter, for purposes of the

9    statute [there, Title VII], that some of the component acts of the hostile work environment fall

10   outside the statutory time period [p]rovided that an act contributing to the claim occurs within

11   the filing period, [in which case] the entire time period of the hostile environment may be

12   considered by a court for the purposes of determining liability").  These matters remain for the

13   court's further consideration, upon a more complete record.

14   CONCLUSION

15   For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

16   1.  Defendants' motion to dismiss plaintiff's Third Amended Complaint, Dckt. No. 24, be

17   granted in part and denied in part;

18   2.  Plaintiff's claims pursuant to Title VII and FEHA be dismissed without leave to

19   amend;

20   3.  Plaintiff's claims pursuant to the Rehabilitation Act and the Americans With

21   Disabilities Act be dismissed with leave to amend; and

22   4.  Plaintiff be granted leave to file, within 60 days of the filing date of any order

23   adopting this recommendation, a Fourth Amended Complaint setting forth claims for

24   discrimination, hostile work environment, and retaliation pursuant to the Rehabilitation Act and

25   the Americans With Disabilities Act.

26   ////

1    These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after

3    being served with these findings and recommendations, any party may file written objections

4    with the court and serve a copy on all parties.  Such a document should be captioned "Objections

5    to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

6    specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

7    F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

8    DATED:  September 17, 2009.

9

10                                EDMUND F. BRENNAN
                                  UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26